THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. HADASSA O. CARTER.

**No. 10901.**

1. RAILROADS — *Injury to Employee — Rules of the Company.* In an action against a railway company to recover damages for wrongfully causing the death of a brakeman by a sudden application of air-brakes, causing him to be thrown from the top of a car and killed, it is not reversible error to admit the printed rules of the railway company governing the management of its trains by its employees, even though not strictly applicable to the circumstances of the case, where the measure of care imposed by the rules read in evidence is not greater than that the law imposes under the facts of the case.

2. ———— *Injury from Negligent Application of Air-brakes.* An engineer in charge of an engine hauling a freight-train, who, when approaching a work-train in plain view ahead of him, goes so near and at such a rate of speed that it is necessary to make a sudden and violent application of the air-brakes with which his train is equipped in order to prevent a collision with it, and who, under the circumstances, so applies the air-brakes as to cause his engine to break loose from the train and the cars to become suddenly stopped, is guilty of negligence, and the company is liable for the death of a brakeman thrown from the top of a freight-car by the sudden stoppage of it in such manner.

Error from Lyon district court; W. A. RANDOLPH, judge.  Opinion filed December 10, 1898.  Affirmed.

5—60 KAN.

Railway Co. v. Carter.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*L. M. Carter, Graves & Dickson,* and *Buck & Spencer,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J. : Alfred Carter was a brakeman employed by the railway company. On the 17th of October, 1896, he was assigned to duty as head brakeman on an extra freight-train moving west from Emporia. There was a work-train and gang of track-layers engaged in relaying the track with new rails in the vicinity of Moon creek, which is about five miles west of Emporia. Pearson, the engineer of the freight-train, was advised of the location of the work-train when he left Emporia, and could see it from his engine when about two miles away from it. As he approached, the work-train started west to go on the siding at the station called Sterry, but after crossing Moon creek bridge it was required to stop on account of the condition of the track ahead of it. When Pearson's train was about a mile from Moon creek bridge, running at the rate of twenty to twenty-two miles an hour, he received a signal from a flagman stationed near a wagon crossing about half way from the bridge, and shut off steam and allowed his train to run down towards the bridge. When his engine was on the bridge and within four to six telegraph-poles of the caboose of the work-train he received a signal to stop from the brakeman of the work-train. Pearson's train consisted of engine and tender, thirty-three freight-cars, and a caboose. Part of the cars were loaded, and the most of them were equipped with Westinghouse air-brakes. On receiving the signal to stop Pearson

applied the air-brakes. The pin coupling the tender to the front freight-car broke in two, and the engine separated from the train. The air-hose was thereby disconnected and the brakes set with full force. At the time the brakes were applied Carter was standing on the front end of the front car, which was a box car, and as the engine moved away from it he fell forward and was ·run over and killed. This action was brought by his widow, as administratrix of his estate, to recover damages from the railway company for negligently causing the death of her husband. The petition charges, among other things, as negligence :

"That said train last mentioned was carelessly and negligently run too near said other train on the same track as aforesaid and was carelessly and negligently brought to a sudden stop by the engineer while running at an unnecessary and improperly high rate of speed, and when the air-brakes were applied by the engineer in a reckless, careless and negligent manner, without warning to said intestate, the engine was kept at the rate of speed attained just prior to said application of the air-brakes, and by reason of such carelessness and negligence and the consequent unnecesary sudden stopping of said train while the engine was going ahead at such a high rate of speed the train was broken in two just in front of the front car of said train, and the said Alfred Carter, then being at his post of duty on the top of the front freight-car, was thrown violently to the ground in front of said car and killed."

The jury returned a verdict in favor of the plaintiff for $4129, together with answers to numerous special questions. Judgment was entered on the verdict, and the railway company now seeks to reverse it.

One of the principal complaints is of the action of the court in admitting in evidence certain rules adopted by the company and. printed on the time-

cards for the guidance of its employees. Especial complaint is made of the reading of rule 89, which is as follows : "Freight-trains following each other must keep not less than five minutes apart (except in closing up at stations, or at meetings, or passing points) unless some form of block signal is used." The burden of the objection to this and the other rules put in evidence is that they were not applicable to this case ; that they applied to trains properly denominated freight-trains and had no application to a work-train. Some of the rules which were read seem to have very little, if any, relevancy to the case, but it is impossible to see how any distinction can be drawn between the measure of care required in approaching a work-train and a freight-train. The dangers incident to a collision would appear to be precisely the same, and the duty to avoid running into a work-train no less than that required with reference to a freight-train. None of the rules offered imposes a higher degree of care on the man in charge of a train than the law imposes in a case like this. The railway company was, therefore, not prejudiced by their admission. The company sought to prove by the engineer, Pearson, that rule 89 had no application to the case of a freight-train approaching a work-train. The questions mostly call for his understanding of the rule and the interpretation he would give it. There was no error in excluding this testimony. Pearson's understanding or explanation of the rule would have neither increased nor diminished the duty resting on him to use care in the management of his train.

It is next argued that the testimony and findings of the jury are insufficient to uphold the recovery ; that no negligence on the part of the engineer was shown by proof or found by the jury ; that the application of

the air-brakes was necessary, and was made in a proper and skilful manner ; that the breaking of the coupling-pin was fortuitous, and the sudden stoppage of the train due to the disconnection of the air-hose. The only negligence imputed to any one contributing to Carter's death was that of Pearson in running his train too near to the work-train and then applying the brakes with violent force. The jury found that at the time Hall, the brakeman of the work-train, gave Pearson the signal to stop, the freight-train was running at the rate of eight to twelve miles an hour and was then within four to six telegraph-poles of the rear end of the work-train. The telegraph-poles are shown to have been about 165 feet apart. The jury also found that Pearson did not operate his train in an ordinarily careful manner from the time he saw the work-train. It is contended that the finding that the brakes were applied with violent force is unsupported by the testimony. Pearson testified that he gave the ordinary service application. It is said also that the only negligence found was in not applying the brake sooner ; that this is not within the averments of the petition, and did not cause or contribute to Carter's death. Both these findings appear to us fairly within the issues made by the pleadings.

Counsel for plaintiff in error would disconnect the negligent running of the train so near to the work-train and at such a high rate of speed from the sudden stoppage of it, and seeks to relieve the company from the effects of the misconduct of Pearson in one of these respects at least. It is clear, however, that the view taken by the jury, and well supported by the evidence, was that Pearson was negligent in failing to bring his train under control before it ran so close to the work-train. It was long and heavy, mov-

ing on a slightly descending grade toward the bridge. The work-train was in full view, and he ought gradually to have stopped his train at a safe distance from it. Instead of that he allowed it to maintain a speed of from eight to twelve miles an hour until he was so near as to require a more vigorous application of the brakes in order to prevent a collision. Notwithstanding the testimony of the engineer with respect to his gentle application of the brakes, the potent circumstance was before the jury that the engine broke the coupling-pin and pulled away from the balance of the train. The jury evidently inferred, and had a right to infer, that a solid iron pin would only be so broken when subjected to a violent strain, and that this strain was occasioned in this instance by retarding the motion of the cars through the application of the brakes, while the momentum of the engine remained with little, if any, diminution. This mode of handling a train the jury regarded as negligent, and while the immediate cause of Carter's death was the sudden stoppage of the car he was standing on, the engineer had induced a necessity for a sudden application of the brakes by running so near the other train at such a rate of speed. His whole conduct was properly before the jury and afforded ample ground for the verdict rendered.

Perceiving no error in the record, the judgment is affirmed.